IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

IN RE:

SALUTARIS DIALYSIS & NEPHROLOGY CENTER

XXX-XX2824

Debtor(s)

CASE NO. 12-04675 BKT

Chapter 11

FILED & ENTERED ON 08/01/2012

## OPINION AND ORDER

This proceeding is before the Court upon a motion to dismiss filed by Hospital Menonita Caguas, Inc. ("Menonita") on June 29, 2012 (Dkt No. 17) and the Debtor's reply to motion to dismiss filed on July 13, 2012 (Dkt No. 25).  For the reasons set forth below, Menonita's request for dismissal is hereby GRANTED.

**I.   Background**

Debtor filed a voluntary petition on June 15, 2012, under the provisions of Chapter 11 of the Bankruptcy Code.  (Dkt. No. 1).  On June 29, 2012, Menonita filed a motion to dismiss, for cause, pursuant to 11 U.S.C. 1112(b)(1).  The motion to dismiss raises two grounds for dismissal: (i) Debtor does not have a legal right to occupy the premises where it is operating, therefore, there is no reasonable likelihood of rehabilitation; and (ii) Debtor does not have a permit or valid license to

1

operate its business.

## A. Relation to Hospital San Juan Bautista bankruptcy proceedings

Debtor is a domestic corporation that operates a dialysis and nephrology center. On February 1, 2009, Debtor and San Juan Bautista Medical Center d/b/a Hospital San Juan Bautista ("Hospital San Juan Bautista") executed a Lease and Operation Agreement (the "Lease Agreement"). The Lease Agreement was to be in effect for five years, commencing on February 1, 2009, and would be subject to renewal for three additional terms consisting of five years each.

On March 18, 2011, Hospital San Juan Bautista filed a voluntary petition, under the provisions of Chapter 11 of the Bankruptcy Code. (Case No. 11-02270(BKT)). As part of the bankruptcy proceedings in the Hospital San Juan Bautista case, on November 22, 2011, a private auction was held for the sale of the rights, titles and interest in the hospital and medical facilities, including, but not limited to, those leases assumed by San Juan Bautista and assigned to the purchaser (the "Sale") (Case No. 11-02270, Dkt No. 431). The successful bidder and resulting purchaser in that case was Menonita (Case No. 11-02270, Dkt No. 444).

On December 2, 2011, the Court entered an "Order Authorizing and Approving (I) the Sale of Certain of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances and the (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases" (Case No. 11-02270, Dkt No. 455), referencing the Asset Purchase Agreement ("APA") executed by Hospital San Juan Bautista and Menonita, and submitted to the Court on December 1, 2011 (Case No. 11-02270, Dkt No. 448). Pursuant to the APA, Menonita obtained all applicable assets and assigned contracts of Hospital San Juan Bautista, including the right to operate the hospital, free and clear of

2

all liens and encumbrances. The APA also provided that Hospital San Juan Bautista would assign to Menonita those executory contracts numbered in the relevant schedules to the APA, and that all remaining executory contracts would be deemed rejected.

In furtherance of the conditions set forth in the APA, on December 8, 2011, Hospital San Juan Bautista filed a motion to assume and assign to Menonita the executory contracts pertaining to the operation of the hospital, including those related with medical insurance providers and a lease agreement (Case No. 11-02270, Dkt No. 462). The Lease Agreement with Debtor was not included among the contracts to be assumed and assigned to Menonita by Hospital San Juan Bautista. The motion filed by Hospital San Juan Bautista requesting to assume executory contracts and assign them to Menonita was granted on December 28, 2011 (Case No. 11-02270, Dkt No. 462). However, Hospital San Juan Bautista has not provided evidence of service to Debtor of the motion to assume and assign the executory contracts.

As a result of the Sale, on November 28, 2011, San Juan Bautista gave notice to Debtor of the termination of the Lease Agreement, effective December 1, 2011 (the "Termination Notice").

**B.      Assignment and transfer of Certificate of Necessity and Convenience, licenses and authorizations from the Puerto Rico Department of Health**

Hospital San Juan Bautista used to operate and administer the hospital and medical center under the Certificate of Necessity and Convenience ("CNC") No. 99-234 issued by the Puerto Rico Department of Health ("DOH") on July 28, 1999[1]. On June 23, 2000, the DOH also issued a CNC for Hospital San Juan Bautista to establish a renal dialysis ambulatory center, CNC No. 00-189.

---

1 The CNC No. 99-234 was issued under the name of San Juan Bautista Medical Center. However, Universidad de Ciencias Médicas San Juan Bautista appears as administrator of the medical center. Notwithstanding, by way of a corporate resolution issued by the board of trustees of Escuela de Medicina San Juan Bautista on December 1, 2011, the school of medicine recognized, adopted and ratified the terms and conditions of the APA, including the authorization and transfer of all applicable CNCs and licenses issued by the DOH to Menonita.

Upon execution of the Lease Agreement, on March 4, 2009, the DOH cancelled CNC No. 00-189 and issued CNC No. 09-052 to Debtor, as lessee, to continue operating the renal and dialysis center. Debtor's CNC was amended and reissued under CNC No. 11-177 on November 8, 2011[2].

The DOH had also issued a license for Debtor[3] to operate as a dialysis ambulatory center under CNC No. 09-052, License No. 17 issued on February 24, 2010, effective until February 21, 2012. Upon the expiration of this license, the DOH certified on March 14, 2012 that Debtor filed all documents needed for the issuance or renewal of the license on March 10, 2012. The DOH then assigned February 21, 2014, as the new expiration date for Debtor's license.

The sale of assets to Menonita was conditioned on the execution of a new lease agreement between Menonita and the DOH. Consistent with the terms of the APA, the assignment and transfer of all the pertinent assets of San Juan Bautista to Menonita, and the operation of the hospital and medical center, also included the issuance of new CNCs and licenses on behalf of Menonita. Consequently, on November 29, 2011, the DOH issued a new license for Menonita to operate and administer the hospital and medical center, License No. 7, issued under CNC No. 11-187. On December 2, 2011, the DOH issued the new CNC No. 11-187, for the operation and administration of the hospital and medical center. CNC No. 11-187 expressly includes the operation and administration of the renal dialysis ambulatory center.

**II. Applicable law and analysis**

---

2 CNCs No. 09-052 & No. 11-177 named Universidad de Ciencias Médicas San Juan Bautista, Inc. as the owner of the medical facilities. By way of a corporate resolution issued by the board of trustees of Escuela de Medicina San Juan Bautista on December 1, 2011, the school of medicine recognized, adopted and ratified the terms and conditions of the APA, including the authorization and transfer of all applicable CNCs and licenses issued by the DOH to Menonita.

3 The license issued by the DOH on February 24, 2010, appears under the name of Caguas Dialysis and Nephrology Center. However, Debtor discloses in its voluntary petition that Salutaris Dialisys & Nephrology Center has also been known as Caguas Dialysis.

4

A. **Dismissal Standard**

Section 1112(b) of the Bankruptcy Code provides for the dismissal or conversion of a chapter 11 case upon a finding of cause. Section 1112(b)(1) provides that:

"...on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause..." 11 U.S.C. §1112(b)(1)

Under this section, dismissal is mandatory upon a showing of cause. In re Sanchez, 429 B.R. 393, 399 (Bankr.D.P.R. 2010). Section 1112 does not define the term "cause", rather, the section simply enumerates examples of cause, any one of which may be sufficient to justify the conversion or dismissal of the case. In re Sanchez, 429 B.R. at 399-400. The term 'cause' includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation". 11 U.S.C. § 1112(b)(4)(A).

B. **Licensing requirements**

Under Puerto Rico Law, no person may establish, operate or maintain in the Commonwealth of Puerto Rico a health facility without a license. 24 L.P.R.A. § 333d. For purposes of this section the term 'person' has been construed as an individual, firm, partnership, corporation, company, association or joint stock association, and the legal successors thereof. 24 L.P.R.A. § 331a.

Likewise, Act No. 2 of November 7, 1975, as amended, (the "Certificate of Necessity and Convenience Law" or the "Act"), 24 L.P.R.A. §§ 334 *et seq*., and the DOH regulations provide the process for requesting and issuing CNCs. Particularly, Section 334a provides that:

"No person may acquire or construct a health facility or offer or develop a new health service, or make capital investments for or in favor of a health facility, or acquire

highly-specialized medical equipment without having first obtained a certificate of necessity and convenience granted by the Secretary [of the DOH]."
24 L.P.R.A. § 334a

A CNC is issued by the DOH and authorizes a person to carry out any of the activities covered by the Act. It certifies that the activities are necessary for the population it is to serve and that it will not unduly affect the existing services. Thereby contributing to the orderly and adequate development of health services in Puerto Rico. Walgreen Co. v. Rullan, 405 F.3d 50, 52 (1st Cir. 2005). The Act identifies the health facilities required to obtain a certificate, provides criteria for granting a certificate, allows the Secretary of the DOH to promulgate additional certificate criteria, and establishes administrative and judicial review procedures governing the certificate review process. Walgreen Co. v. Rullan, 405 F.3d at 52-53.

**III. Conclusion**

The record of the case shows that the Lease Agreement between Debtor and Hospital San Juan Bautista was never assumed by the latter in the bankruptcy case of Hospital San Juan Bautista and was never assigned to Menonita as part of those proceedings. Contrariwise, San Juan Bautista's actions intended the rejection of the Lease Agreement. However, due to the lack of adequate notice and service to Debtor of the motion to assume and assign the executory contracts, the Court cannot enforce such remedy upon Debtor.

Notwithstanding, the Court is aware that Debtor was duly notified of the termination of the Lease Agreement by Hospital San Juan Bautista contemporary with the sale of all assets and interest of the hospital and medical facilities to Menonita. The Termination Notice was valid and enforceable.

Moreover, The CNC No. 11-187 issued by the DOH in favor of Menonita specifically contains the operation and administration of the renal dialysis ambulatory center formerly leased by Hospital San Juan Bautista to Debtor. This Court is of the opinion that both, the CNC No. 11-187 and License No. 7 granted by the DOH to Menonita revoke and supersede the CNC No. 99-234 by which Hopital San Juan Bautista was authorized to operate and administer the hospital and medical center, as well as CNC No. 09-052 & 11-177, which authorized Debtor to operate the dialysis ambulatory center. As such, Debtor's CNC No. 09-052 & 11-177, as well as License No. 17 were rescinded. Debtor has not proven otherwise. Therefore, the Court finds that Debtor is, thus, operating without a valid CNC and/or License.

The fact that the Lease Agreement was terminated by Hospital San Juan Bautista and no new lease agreement is in place with the new administrator, Menonita, means that Debtor can no longer operate its business on those premises. This results in a substantial loss or diminution of the estate. 11 U.S.C. §1112(b)(4)(A). Also, the fact that Debtor's CNC and license were revoked complements that conclusion. Thus, reorganization is unlikely in this case. Accordingly, the Court finds no reasonable likelihood of rehabilitation.

The fact that Debtor's assets comprise mainly the Lease Agreement for the operation of the dialysis ambulatory service, which is no longer in effect, there would be no assets to liquidate or administer in a potential Chapter 7 case. Thus it appears that dismissal and not conversion is in the best interest of the creditors and the estate.

WHEREFORE, IT IS ORDERED that Menonita's motion to dismiss shall be, and it hereby is, GRANTED.

7

It is further ORDERED that the Clerk shall dismiss and close any contested matter or adversary proceeding related to the instant case.

IT IS SO ORDERED.

San Juan, Puerto Rico this 01 day of August, 2012.

Brian K. Tester
U.S. Bankruptcy Judge