IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

IN RE:

SALUTARIS DIALYSIS & NEPHROLOGY
CENTER

XXX-XX2824

Debtor(s)

CASE NO. 12-04675 BKT

Chapter 11

FILED & ENTERED ON 10/17/2012

**OPINION AND ORDER**

This proceeding is before the Court upon a motion filed by Debtor on August 15, 2012, requesting reconsideration of the Opinion and Order of August 1, 2012 dismissing the case (the "Opinion and Order") (Dkt. No. 40). Debtor also requests the Court to amend and/or alter certain findings of fact and conclusions of law under Rule 52(b) F.R. Civ. P. (Dkt. No. 40). Also before the Court is Escuela de Medicina San Juan Bautista's ("EMSJB") opposition to Debtor's motion requesting reconsideration of dismissal (Dkt. No. 41), Hospital Menonita Caguas, Inc's, ("Menonita") opposition to the motion for reconsideration (Dkt. No.44) and Debtor's reply to EMSJB and Menonita's oppositions (Dkt. No. 48). For the reasons set forth below, Debtor's motion requesting reconsideration of order dismissing the case and requesting the Court to alter or amend findings of fact and conclusions of law is hereby DENIED.

## I.  Introduction

Based on the record of the case, the motions and documentary evidence submitted by the

1

parties, the Court made the following findings of fact:

1. On February 1, 2009, Debtor and San Juan Bautista Medical Center d/b/a Hospital San Juan Bautista ("Hospital San Juan Bautista") executed a Lease and Operation Agreement (the "Lease Agreement").

2. The Lease Agreement was to be in effect for five years, commencing on February 1, 2009, and would be subject to renewal for three additional terms consisting of five years each.

3. On March 18, 2011, Hospital San Juan Bautista filed a voluntary petition, under the provisions of Chapter 11 of the Bankruptcy Code.  (Case No. 11-02270(BKT)).

4. As part of the bankruptcy proceedings in the Hospital San Juan Bautista case, on November 22, 2011, a private auction was held for the sale of the rights, titles and interest in the hospital and medical facilities, including, but not limited to, those leases assumed by San Juan Bautista and assigned to the purchaser (the "Sale") (Case No. 11-02270, Dkt No. 431).

5. The successful bidder and resulting purchaser in that case was Menonita (Case No. 11-02270, Dkt No. 444).

6. On December 2, 2011, the Court entered an "Order Authorizing and Approving (I) the Sale of Certain of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances and the (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases" (Case No. 11-02270, Dkt No. 455), referencing the Asset Purchase Agreement ("APA") executed by Hospital San Juan Bautista and Menonita, and submitted to the Court on December 1, 2011 (Case No. 11-02270, Dkt No. 448).

2

7. Pursuant to the APA, Menonita obtained all applicable assets and assigned contracts of Hospital San Juan Bautista, including the right to operate the hospital, free and clear of all liens and encumbrances.

8. The APA also provided that Hospital San Juan Bautista would assign to Menonita those executory contracts numbered in the relevant schedules to the APA, and that all remaining executory contracts would be deemed rejected.

9. In furtherance of the conditions set forth in the APA, on December 8, 2011, Hospital San Juan Bautista filed a motion to assume and assign to Menonita the executory contracts pertaining to the operation of the hospital, including those related with medical insurance providers and a lease agreement (Case No. 11-02270, Dkt No. 462).

10. The Lease Agreement with Debtor was not included among the contracts to be assumed and assigned to Menonita by Hospital San Juan Bautista.

11. The motion filed by Hospital San Juan Bautista requesting to assume executory contracts and assign them to Menonita was granted on December 28, 2011 (Case No. 11-02270, Dkt No. 462). However, Hospital San Juan Bautista has not provided evidence of service to Debtor of the motion to assume and assign the executory contracts.

12. As a result of the Sale, on November 28, 2011, Hospital San Juan Bautista gave notice to Debtor of the termination of the Lease Agreement, effective December 1, 2011 (the "Termination Notice").

3

13. Hospital San Juan Bautista used to operate and administer the hospital and medical center under the Certificate of Necessity and Convenience ("CNC") No. 99-234 issued by the Puerto Rico Department of Health ("DOH") on July 28, 1999[1].

14. On June 23, 2000, the DOH also issued a CNC for Hospital San Juan Bautista to establish a renal dialysis ambulatory center, CNC No. 00-189.

15. Upon execution of the Lease Agreement, on March 4, 2009, the DOH cancelled CNC No. 00-189 and issued CNC No. 09-052 to Debtor, as lessee, to continue operating the renal and dialysis center.

16. Debtor's CNC was amended and reissued under CNC No. 11-177 on November 8, 2011[2].

17. The DOH had also issued a license for Debtor[3] to operate as a dialysis ambulatory center under CNC No. 09-052, License No. 17 issued on February 24, 2010, effective until February 21, 2012.

18. Upon the expiration of this license, the DOH certified on March 14, 2012 that Debtor filed all documents needed for the issuance or renewal of the license on March 10, 2012. The DOH then assigned February 21, 2014, as the new expiration date for Debtor's license.

19. The sale of assets to Menonita was conditioned on the execution of a new lease agreement between Menonita and the DOH.

---

[1] The CNC No. 99-234 was issued under the name of San Juan Bautista Medical Center. However, Universidad de Ciencias Médicas San Juan Bautista appears as administrator of the medical center. Notwithstanding, by way of a corporate resolution issued by the board of trustees of Escuela de Medicina San Juan Bautista on December 1, 2011, the school of medicine recognized, adopted and ratified the terms and conditions of the APA, including the authorization and transfer of all applicable CNCs and licenses issued by the DOH to Menonita.

[2] CNCs No. 09-052 & No. 11-177 named Universidad de Ciencias Médicas San Juan Bautista, Inc. as the owner of the medical facilities. By way of a corporate resolution issued by the board of trustees of Escuela de Medicina San Juan Bautista on December 1, 2011, the school of medicine recognized, adopted and ratified the terms and conditions of the APA, including the authorization and transfer of all applicable CNCs and licenses issued by the DOH to Menonita.`

[3] The license issued by the DOH on February 24, 2010, appears under the name of Caguas Dialysis and Nephrology Center. However, Debtor discloses in its voluntary petition that Salutaris Dialysis & Nephrology Center has also been known as Caguas Dialysis

4

20. Consistent with the terms of the APA, the assignment and transfer of all the pertinent assets of San Juan Bautista to Menonita, and the operation of the hospital and medical center, also included the issuance of new CNCs and licenses on behalf of Menonita.

21. On November 29, 2011, the DOH issued a new license for Menonita to operate and administer the hospital and medical center, License No. 7, issued under CNC No. 11-187.

22. On December 2, 2011, the DOH issued the new CNC No. 11-187, for the operation and administration of the hospital and medical center.

23. The CNC No. 11-187 expressly includes the operation and administration of the renal dialysis ambulatory center.

Based on the foregoing facts the Court concluded the following:

24. The Lease Agreement between Debtor and Hospital San Juan Bautista was never assumed by the latter in the bankruptcy case of Hospital San Juan Bautista. The Lease Agreement was never assigned to Menonita as part of those proceedings.

25. Hospital San Juan Bautista's actions intended the rejection of the Lease Agreement.

26. Due to the lack of adequate notice and service to Debtor of the motion to assume and assign the executory contracts, the Court cannot enforce such remedy upon Debtor.

27. The Court is aware that Debtor was duly notified of the termination of the Lease Agreement by Hospital San Juan Bautista contemporary with the sale of all assets and interest of the hospital and medical facilities to Menonita.

28. The Termination Notice was valid and enforceable

29. The CNC No. 11-187 issued by the DOH in favor of Menonita specifically contains the operation and administration of the renal dialysis ambulatory center formerly leased by Hospital San Juan Bautista to Debtor.

30. Both the CNC No. 11-187 and License No. 7 granted by the DOH to Menonita revoke and supersede the CNC No. 99-234 by which Hopital San Juan Bautista was authorized to operate and administer the hospital and medical center, as well as CNC No. 09-052 & 11-177, which authorized Debtor to operate the dialysis ambulatory center.

31. Debtor's CNC No. 09-052 & 11-177, as well as License No. 17 were rescinded. Debtor has not proven otherwise.

32. Debtor is operating without a valid CNC and/or License.

33. Because the Lease Agreement was terminated by Hospital San Juan Bautista and no new lease agreement is in place with the new administrator (Menonita) Debtor can no longer operate its business on those premises.

34. This results in a substantial loss or diminution of the estate. 11 U.S.C. §1112(b)(4)(A).

35. The fact that Debtor's CNC and license were revoked complements that conclusion.

36. Reorganization is unlikely in this case. Accordingly, the Court found no reasonable likelihood of rehabilitation.

37. Debtor's main asset is the Lease Agreement for the operation of the dialysis ambulatory service, which is no longer in effect.

38. There are no assets to liquidate or administer in a potential Chapter 7 case. Thus, dismissal appeared to be in the best interest of the creditors and the estate, and not conversion.

6

**II. Applicable law and analysis**

**A.      Findings and Conclusions made by the Court**

Rule 7052 of the Federal Rules of Bankruptcy Procedure makes Rule 52 of the Federal Rules of Civil Procedure applicable in adversary proceedings.  Bankruptcy Rule 7052 is also applicable to contested matters by virtue of Bankruptcy Rules 1018 and 9014.  Rule 52 of the Federal Rules of Civil Procedure provides, in the pertinent part, as follows:

> (a) Findings and Conclusions.
>    (1) In General. In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58.
> …
>    (3) For a Motion. The court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56 or, unless these rules provide otherwise, on any other motion.
> …
>    (6) Setting Aside the Findings. Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.
> …
> (b) Amended or Additional Findings. On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings--or make additional findings--and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.[4]

Pursuant to Rule 52(a)(3) F.R. Civ. P., findings of fact and conclusions of law are not necessary with respect to decisions on motions, including motions for summary judgment.  Notwithstanding, the Court in this case has supported its reasoning with statements and conclusions based on the record.  The language in Rule 52(a)(6) F.R. Civ. P., and adopted by Bankruptcy Rule 7052,

---

[4] Bankruptcy Rule 7052 specifically provides that any motion under subdivision (b) for amended or additional findings shall be filed no later than 14 days after entry of judgment.

7

establishes that findings of fact must not be set aside, whether based on oral or other evidence, unless they are clearly erroneous. Nowhere in Debtor's motion for reconsideration and to alter or amend facts or conclusions of law, or in Debtor's reply, has there been a showing of clear error.

**B.     The purported findings that need to be altered or amended**

It is Debtor's contention that the following findings made by the Court need to be altered or amended:

**1.     The Court is aware that Debtor was duly notified of the termination of the Lease Agreement by Hospital San Juan Bautista contemporary with the sale of all assets and interest of the hospital and medical facilities to Menonita.**

Debtor sustains that the notice of termination of the Lease Agreement between Debtor and Hospital San Juan Bautista is dated November 28, 2011, but was not actually received by Debtor's officers until December 5, 2011. The record shows that the private auction in the Hospital San Juan Bautista case was held on November 22, 2011 (Case No. 11-02270, Dkt No. 431). On December 2, 2011, the Court entered an "Order Authorizing and Approving (I) the Sale of Certain of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances and the (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases" (Case No. 11-02270, Dkt No. 455), referencing the Asset Purchase Agreement ("APA") executed by Hospital San Juan Bautista and Menonita, the successful bidder (Case No. 11-02270, Dkt No. 448). It is still the opinion of this Court that Debtor was duly notified of the termination of the Lease Agreement by Hospital San Juan Bautista contemporarily with the sale of all assets and interest of the hospital and medical facilities to Menonita. Contemporaneous being a period of time happening, existing, living, or coming into

8

being during the same period of time[5].

## 2. The Termination Notice was valid and enforceable.

In assessing the validity of a contract, state law principles of contract interpretation and construction apply. After all, it is a well-known principle in bankruptcy that state law governs the substance of property rights and interests, as "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." Butner v. United States, 440 U.S. 48, 54-55, 99 S. Ct. 914, 917-918, 59 L. Ed. 2d 136 (1979). This general rule was reaffirmed in Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co., 549 U.S. 443, 450-51, 127 S. Ct. 1199, 1205, 167 L. Ed. 2d 178, 186 (2007).

Under Puerto Rico law, obligations arising from contracts have legal force between the contracting parties and must be fulfilled in accordance therewith. Puerto Rico Civil Code Article 1044, 31 L.P.R.A. § 2994. A court cannot release a party from its contractual obligations when said contract is legal and valid and has no defect whatsoever. Garcia v. World Wide Entmt. Co., 1992 P.R.-English 754, 802; 132 D.P.R. 378, 385 (1992); Cervecería Corona v. Commonwealth Ins. Co., 115 D.P.R. 345, 351 (1984); Olazábal v. U.S. Fidelity, 103 D.P.R. 448, 462 (1975). As a general rule, "the fact that a plaintiff who alleges a breach of contract has an adequate remedy by way of damages does not bar him from seeking performance of the contract." Garcia v. World Wide Entmt. Co., 1992 P.R.-English 754, 802; 132 D.P.R. 378, 385 (1992) citing Vázquez v. Tribl. Superior, 78 D.P.R. 744, 753 (1955); see also, Mercado-Salinas v. Bart Enterprises Intern., Ltd. 2012 WL 3716721, n.1 (D.P.R. 2012). This, however, is not an absolute or automatic remedy. "Ordinarily,

---

[5] http://www.merriam-webster.com/dictionary/contemporary

9

the plaintiff may choose between compelling performance of contract or rescinding the obligation and recover damages, unless some special circumstance or provision exists that bars an order to force the performance of the contract." Garcia v. World Wide Entmt. Co., supra.

In the present case, the Court made a determination specifically as to the termination of the contract. This Court found that Hospital San Juan Bautista terminated the Lease Agreement with Debtor at the same time and as a result of, the sale of all assets and interest of the hospital and medical facilities to Menonita, free and clear of all liens and encumbrances. Debtor was notified of the termination of the Lease Agreement, and has accepted as much. This Court's determination in no way passed judgment over the contractual relationship between Debtor and Hospital San Juan Bautista. There is no need to enter into the interpretation and construction of the Lease Agreement, and there never was. As a Debtor, Hospital San Juan Bautista is vested with the power to reject the executory contracts and unexpired leases under section 365 of the Bankruptcy Code, for the benefit of the estate. Under section 363 of the Bankruptcy Code Debtor is also empowered to execute a speedy transfer of assets free and clear of encumbrances and interests, including the transfer of the contracts, as deemed necessary for the benefit of the estate.

The sale of assets from San Juan Bautista to Menonita free and clear of all liens and encumbrances, and the lack of assumption and assignment of the Lease Agreement to Menonita, created a special circumstance that bars an order to force the performance of the contract or Lease Agreement with Debtor. Therefore, the termination was valid and enforceable. Noteworthy, the Lease Agreement executed between Debtor and Hospital San Juan Bautista was never enforceable against Menonita.

10

**3. Debtor is operating without a valid CNC and/or License.**

Based on the record of the case at the time the Opinion and Order was entered, on August 1, 2012, the Court made the following reasoning with regards to the CNCs and licenses needed to operate the medical facilities and dialysis center:

a) Upon execution of the Lease Agreement on March 4, 2009, the DOH cancelled Hospital San Juan Bautista's CNC No. 00-189 and issued CNC No. 09-052 to Debtor, as lessee, to continue operating the renal and dialysis center.

b) Debtor's CNC was later amended by the DOH and reissued under CNC No. 11-177.

c) The DOH also issued a license for Debtor to operate as a dialysis ambulatory center under CNC No. 09-052, License No. 17 issued on February 24, 2010, effective until February 21, 2012.

d) Upon the expiration of this license, the DOH certified on March 14, 2012 that Debtor filed all documents needed for the issuance or renewal of the license on March 10, 2012. The DOH then assigned February 21, 2014 as the new expiration date for Debtor's license.

e) Notwithstanding the extension of the Debtor's license by the DOH until February 21, 2014, on November 29, 2011, the DOH issued a new License No. 7 for Menonita to operate and administer the hospital and medical center, issued under CNC No. 11-187.

f) Also, on December 2, 2011, the DOH issued a new CNC No. 11-187, for the operation and administration of the hospital and medical center. The CNC No. 11-

11

187 expressly includes the operation and administration of the renal dialysis ambulatory center.

g) Moreover, the CNC No. 11-187 issued by the DOH in favor of Menonita specifically contains the operation and administration of the renal dialysis ambulatory center formerly leased by Hospital San Juan Bautista to Debtor.

As a result, the Court concluded that both the CNC No. 11-187 and License No. 7 granted by the DOH to Menonita revoked and superseded the CNC No. 99-234 by which Hopital San Juan Bautista was authorized to operate and administer the hospital and medical center, and CNC No. 09-052 & 11-177, which authorized Debtor to operate the dialysis ambulatory center. The issuance of the new CNC and license by the DOH to Menonita cannot co-exist with the previous CNC and licenses issued to San Juan Bautista and Debtor to perform the same functions. The performance of those operations now correspond to Menonita as a result of the sale of assets. To the contrary, the issuance of the new CNC and license by the DOH to Menonita resulted in the disentitlement of San Juan Bautista and Debtor from operating and administering the hospital and medical center, as well as the dialysis ambulatory center.

By way of the reconsideration and request to alter or amend the findings made by this Court, Debtor submits new evidence of the cancelation of Debtor's license by the DOH. The DOH determination dated August 7, 2012, specifically makes reference to a previous determination made by the DOH on May 15, 2012, designating the transfer of assets from Hospital San Juan Bautista to Menonita. Based on that previous determination and on the transfer of the assets and operations to Menonita on August 7, 2012, the DOH notified the revocation of the certification issued on March

12

14, 2012, which had extended until February 21, 2014 the expiration date of Debtor's license. By revoking the certification with the extension of the license, Debtor's license effectively expired on February 21, 2012. The DOH determination is in conformity with and, if nothing else, supports the conclusion of this Court that the issuance of the new CNC and license by the DOH to Menonita had the effect of revoking and superseding the CNC No. 99-234 by which Hopital San Juan Bautista was authorized to operate and administer the hospital and medical center, and CNC No. 09-052 & 11-177, which authorized Debtor to operate the dialysis ambulatory center. This also leads to the conclusion that Debtor was operating without a valid CNC and/or License at the time of the Opinion and Order, and still is.

Debtor argues that the DOH reconsidered its determination to revoke Debtor's license and granted a new certification validating the license to operate the dialysis center. Upon a revision of the new evidence submitted by Debtor, particularly the Certification issued by the DOH on August 15, 2012, the Court can ascertain that in fact the DOH reconsidered revoking Debtor's license effective immediately. The DOH concluded that in order to have a smooth transition for the patients that receive their treatment in the dialysis center, Debtor's license will be in effect until August 31, 2012. This Court is unaware of the effects of the DOH's determination with respect to the CNC and licenses issued to Menonita. Nevertheless, for purposes of this case, the Court reiterates its conclusion that Debtor's license had been revoked at the time of the Opinion and Order of August 1, 2012 by operation of the CNC and licenses issued to Menonita, as corroborated by the notification of the revocation by the DOH. What is more, as of this date, Debtor's license has been officially revoked by the DOH, as evidenced by the new evidence submitted by Debtor. Thus, Debtor

currently has no valid CNC and/or License to operate.

### 4. Debtor's CNC No. 09-052 & 11-177, as well as License No. 17 were rescinded. Debtor has not proven otherwise.

The same analysis and conclusion as set forth above in section 3 apply to this finding. In order to avoid redundancy, we will merely refer the reader back to section 3.

Based on all of the forgoing, the Court determines it is unnecessary to alter its findings of fact and conclusions of law, as exposed in its Opinion and Order of August 1, 2012. There has been no showing of a clearly erroneous determination from this Court. Accordingly, Debtor's request to amend or alter findings of fact and conclusions of law is DENIED.

### C. Debtor's request for reconsideration of the Opinion and Order of August 1, 2012

Debtor seeks reconsideration of the dismissal pursuant to Federal Rule of Bankruptcy Procedure 9023, which makes Federal Rule of Civil Procedure 59 applicable to bankruptcy proceedings. The request for reconsideration is grounded on the purported need to alter or amend certain findings of facts and conclusions of law made by this Court in its Opinion and Order of August 1, 2012, dismissing the instant case. EMSJB and Menonita have opposed to Debtor's request for reconsideration because it fails to establish any manifest error of law or fact or compelling newly discovered evidence which would merit this Court's reconsideration of the Opinion and Order. Furthermore, it is Menonita's contention that the only evidence that could be considered as "new" evidence is in itself insufficient to reverse this Court's Opinion and Order. Menonita sustains that the letters submitted by Debtor in its motion for reconsideration pretend to establish that Debtor has a valid license to operate its business; however, even assuming that said letters are valid and

14

constitute a license to operate, they clearly establish that Debtor's right to operate was limited to August 31, 2012. Because Debtor would still have a substantial loss or diminution of the estate without its license and operations of the dialysis center, and pursuant to 11 U.S.C. §1112(b)(4)(A), Menonita sustains that this Court's Opinion and Order should stand. This Court agrees with the positions of EMSJB and Menonita.

As thoroughly discussed in the previous sections, this Court has found that there is no need to alter or amend the determinations made by the Court in its Opinion and Order of August 1, 2012.

In conformity with Federal Rule of Civil Procedure 59, a party seeking reconsideration "must either clearly establish a manifest error of law or must present newly discovered evidence." Marie v. Allied Home Mortgage Corp., 402 F. 3rd 1, 7 n. 2 (1st Cir. 2005) quoting Pomerleau v. W. Springfield Pub. Sch., 362 F. 3d 143, 146 n. 2 (1st Cir. 2004). In Marie, the First Circuit also cited a leading treatise, noting four grounds for granting a motion for reconsideration under Federal Rules of Civil Procedure 59 (e). The grounds are "manifest errors of law or fact, newly discovered or previously unavailable evidence, manifest injustice, and an intervening change in controlling law." Marie v. Allied Home Mortgage Corp., 402 F 3rd at 7 (citing 11 C. Wright et al., Federal Practice & Procedure § 2810.1 (2d ed. 1995)).

Reconsideration of a judgment under Rule 59 is an extraordinary remedy that is used sparingly and only when the need for justice outweighs the interests advanced by a final judgment. It is directed at allowing a court to correct its own errors. White v. New Hampshire Dept. of Employment Security, 455 U.S. 445, 450 (1982). Moreover, it is well settled that Rule 59 (e) does not exist to give parties a second chance to prevail on the merits generally. Rule 59 (e) is not to be

15

used to reassert arguments and theories previously rejected by the Court.  The rule is that Rule 59(e) motions are to be "aimed at reconsideration, not initial consideration." Harley-Davidson Motor Co., Inc. v. Bank of New England-Old Colony, N.A., 897 F.2d 611, 616 (1st Cir. 1990). See also, Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc., 899 F. 2d 119, 123 (1st Cir. 1999) (Rule 59 (e) does not allow the losing party to rehash old arguments, previously considered and rejected). Thus, parties should not use Rule 59(e) motions to raise arguments which could, and should, have been made before judgment issued.  Id. (quoting Federal Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir.1986)).  "Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence . . . [t]hey may not be used to argue a new legal theory." Id.

In the motion for reconsideration and reply to the oppositions Debtor rehashes some of the arguments raised in its response to the motion to dismiss and subsequent motions.  The Court finds unnecessary and superfluous a discussion of the arguments already considered and rejected upon the analysis that led to granting of the motion to dismiss filed by Menonita.  Also, the Court declines to rule on the matters raised by Debtor for the first time on reconsideration.  Furthermore, this Court has hereto considered and denied Debtor's request to amend or alter findings of fact and conclusions of law.

Even the evidence that could be considered as "new" evidence to try to comply with the strict standards of Federal Rule of Civil Procedure 59(e) is insufficient to alter the Court's conclusion that the case should be dismissed.  The "new" evidence submitted by Debtor, specifically the DOH determination dated August 7, 2012, notifying the revocation of the certification issued on March 14,

2012, had the effect of revoking Debtor's license effective on February 21, 2012. This determination by the DOH is in conformity with and in support of the conclusion of this Court that Debtor's CNC and license were revoked as a result of the issuance of the new CNC and license by the DOH to Menonita.

Also, the Certification issued by the DOH on August 15, 2012, after the Opinion and Order was issued, reconsidering the revocation of Debtor's license, specifically stated that Debtor's license would be in effect for transition purposes until August 31, 2012. This determination by the DOH also supports this Court's conclusion that Debtor's license had been revoked at the time of the Opinion and Order of August 1, 2012. What is more, the limited extension offered by the DOH expired on August 31, 2012. Thus, as of this date, Debtor does not have a valid CNC and/or License to operate.

For these reasons, the Court finds that even with the "newly" discovered or previously unavailable evidence presented by Debtor, there has been no showing of a manifest injustice or error of law that outweighs the interests advanced by a final order. Hence, the Court reaffirms its conclusion that because the Lease Agreement was terminated by Hospital San Juan Bautista and no new lease agreement is in place with the new administrator, Menonita, Debtor can no longer operate its business on those premises. This results in a substantial loss or diminution of the estate. 11 U.S.C. §1112(b)(4)(A). The fact that Debtor's CNC and license have been revoked by the DOH supports that conclusion. The Court hereby reiterates that reorganization and/or rehabilitation is unlikely in this case given that Debtor's main asset was the Lease Agreement which has been revoked. Accordingly, Debtor's motion for reconsideration is also DENIED.

17

### III. Conclusion

For the reasons discussed in detail above, and absent a showing of a clearly erroneous determination by this Court, Debtor's request to amend or alter findings of fact and conclusions of law is DENIED. Further, even with the "newly" discovered or previously unavailable evidence presented by Debtor, there has been no showing of a manifest injustice or error of law that warrants reconsideration. Hence, Debtor's motion for reconsideration is also DENIED.

WHEREFORE, IT IS ORDERED that Debtors' motion requesting reconsideration and to alter or amend findings of fact and conclusions of law shall be, and it hereby is, DENIED. The case remains dismissed.

IT IS SO ORDERED.

San Juan, Puerto Rico this 17 day of October, 2012.

Brian K. Tester
U.S. Bankruptcy Judge